UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEANA PATTISON,<br><br>                Plaintiff,<br>    v.<br><br>OMNITRITION<br>INTERNATIONAL, INC., et al.,<br><br>                Defendants. | CASE NO. C17-1454JLR<br><br>ORDER REMANDING CASE |

## I. INTRODUCTION

Before the court are (1) Defendants Roger M. Daley and Barbara Daley's (collectively, "the Daleys") motion for leave to file an amended notice of removal (MTA (Dkt. # 24)); and (2) Plaintiff Deana Pattison's motion to remand this matter to state court (MTR (Dkt. # 12)). The court has considered the motions, the parties' submissions in support of and in opposition to the motions, the relevant portions of the record, and the applicable law. Neither party requests oral argument for either motion. Being fully

ORDER - 1

advised, the court GRANTS the Daleys' motion for leave to file an amended notice of removal and GRANTS Ms. Pattison's motion to remand. Because the court remands this action to King County Superior Court, the court DENIES as moot the remaining pending motions.[1]

## II. BACKGROUND

Ms. Pattison originally brought this putative class action against Defendants Omnitrition International, Inc. ("Omnitrition"), the Daleys, and Does 1-100 serving as Omnitrition distributors (collectively, "the original Defendants") on July 25, 2017, in King County Superior Court. (*See* Torres Decl. (Dkt. # 13) ¶ 2, Ex. A; Beneski Decl. (Dkt. # 3) ¶ 2, Ex. A ("Compl.") ¶¶ 2.2-2.4.) She asserted that the original Defendants engaged in the "illegal and deceptive practice of manufacturing, promoting, marketing, selling, and distributing" weight-loss products, called Omni Drops, containing human chorionic gonadotropin ("hCG"), a hormone that has been prescribed to assist weight loss. (Compl. ¶ 1.1-1.2, 4.15.) Relying on the original Defendants' representations and advertisements that users will experience "significant and rapid weight loss," Ms. Pattison purchased Omni Drops and was allegedly "misled into purchasing and paying for a product that is not as represented." (*Id.* ¶ 4.32.) Because the two motions before the

---

[1] The remaining motions include Defendants Omnitrition International, Inc. and the Daleys' motion to dismiss (MTD (Dkt. # 10)), Ms. Pattison's motion for relief from responding to the Daleys' motion to dismiss (Mot. for Relief (Dkt. # 15)), and Defendant Jennifer Van Vynck's motion to dismiss (Van Vynck MTD (Dkt. # 33)). The court previously noted that the parties were not required to brief these later motions until the court has ruled on the motions concerning remand. (10/24/017 Min. Order (Dkt. # 36) at 2.) Because the court remands this action to state court, these remaining motions are denied as moot.

ORDER - 2

court concern issues of service and removal, the court details the facts relevant to both issues.

A.   Service on the Daleys

On August 8, 2017, Ms. Pattison attempted to serve the Daleys at their residence. (Beneski Decl. ¶ 2, Ex. A-6 ("Daleys Aff. of Serv.") at 1.) The process server presented the summons and complaint to a "John Doe" who "tried to refuse service by picking [the] documents up and placing [the] documents outside of the property." (*Id.*) The man "came out of [the] garage" and demanded that the server leave the premises. (*Id.*) The server left the papers at the man's feet, and the man "picked up the paperwork and . . . placed the paperwork into [the] server's open Jeep window." (*Id.*) The server "nudged [the] paperwork out of [the] vehicle" and left. (*Id.*) The Daleys have since attested that John Doe is their son, who "reported to [the Daleys] that he spoke with a person who attempted to present him with documents on August 8, 2017 when [he] was visiting [the] home." (Roger Daley Decl. (Dkt. # 4) ¶ 4; Barbara Daley Decl. (Dkt. # 5) ¶ 4.) The Daleys state that their son does not live at the house and was simply visiting on that day. (*Id.*) The Daleys further state that they are the only residents at their home. (*Id.* ¶ 5.)

Ms. Pattison later prepared an "Acceptance of Service," which she sent to counsel for the Daleys. Counsel for the Daleys executed and returned this document on September 27, 2017, thus establishing acceptance of service. (2d Beneski Decl. (Dkt. # 21) ¶ 5, Ex. C at 1-2.)

//

//

**B.     Removal**

On September 22, 2017, counsel for the original Defendants conferred with Ms. Pattison's counsel and advised that the Daleys were considering removing the case to federal court. (2d Beneski Decl. ¶ 2.) Counsel inquired as to whether Ms. Pattison's counsel was aware of any basis on which removal would be improper. (*Id.*) Ms. Pattison's counsel pointed only to the unidentified Doe defendants, noting that some may be domiciled in Washington. (*Id.*)

Three days later, on September 25, 2017, Ms. Pattison filed an amended complaint in state court. (*See* Torres Decl. ¶ 2, Ex. A; FAC (Dkt. # 1-2).) The amended complaint added Jennifer Van Vynck, who resides in Washington and does business as Jennifer Van Vynck Omnitrition Independent, as a defendant. (FAC ¶ 2.5.) Ms. Pattison brings four claims against Ms. Van Vynck: violation of the Washington's Consumer Protection Act ("CPA"), RCW 19.86, through unfair and deceptive acts or practices, fraud, misrepresentation, and unjust enrichment.[2] (*Id.* ¶¶ 6.1-6.22.) The complaint alleges that Ms. Van Vynck "marketed and sold Omnitrition's hCG Omni Drops to [Ms.] Pattison." (*Id.*) It further asserts that she, along with the original Defendants, (collectively, "Defendants") "engaged in unfair and deceptive acts or practices" (*id.* ¶ 6.2), "marketed and represented that Omnitrition's hCG Omni Drops were approved for homeopathic use

---

[2] The Daleys seem to believe that Ms. Pattison also seeks to pierce the corporate veil against Ms. Van Vynck. (*See* Am. Not. of Removal (Dkt. # 19) ¶ 6.b.iv.B.) But unlike the other causes of action that Ms. Pattison directs towards "Defendants" collectively, the "piercing the corporate veil" claim names only the Daleys and Omnitrition; there is no mention of Ms. Van Vynck. (*See* FAC ¶¶ 6.24-6.25.) Thus, the court does not believe that Ms. Pattison seeks to pierce the corporate veil against Ms. Van Vynck.

by the FDA" (*id.* ¶ 6.7) and knew that this was not true (*id.* ¶ 6.9) but continued to make these misrepresentations to sell Omni Drops (*see id.* ¶¶ 6.10-6.13).

The same day, the Daleys filed a notice of removal on the basis of diversity jurisdiction. (Not. of Removal (Dkt. # 1) ¶ 4.) As to Ms. Van Vynck, the Daleys claimed that because she had not yet been served, her citizenship is not considered when determining whether an action is removable on the grounds of diversity jurisdiction. (*Id.* ¶ 5.iv (citing *Pullman Co. v. Jenkins*, 305 U.S. 534 (1939); *Republic W. Ins. Co. v. Int'l Ins. Co.*, 765 F. Supp. 628, 629 (N.D. Cal. 1991)).)

On October 5, 2017, Ms. Pattison moved to remand for lack of complete diversity and insufficient amount in controversy. (*See generally* MTR); *see also* 28 U.S.C. § 1332. The Daleys subsequently moved to amend their notice of removal, eliminating their lack of service argument and instead purporting that "Ms. Van Vynck's citizenship may be disregarded because she has been fraudulently joined." (Am. Not. of Removal ¶ 6.b.iv.) The court now addresses the two motions.

### III. ANALYSIS

The parties raise a litany of issues in their briefing of the two motions. First, the parties disagree on whether the Daleys' removal is timely.[3] Second, the parties dispute whether the Daleys may amend their grounds for removal, namely whether they may now

---

[3] Ms. Pattison raises this issue in her response to the Daleys' motion for leave to amend and her reply in support of remand, but not in her original motion to remand. (*See* MTA Resp. at 2-5; MTR Reply (Dkt. # 37) at 2-3; *see generally* MTR.) However, the issue is pertinent to the question of removal and thus, the court considers this argument for the sake of judicial efficiency.

argue that fraudulent joinder preserves complete diversity. And lastly, even if amendment is allowed, the parties disagree on the merits of removal and whether federal jurisdiction exists. The court addresses each issue in turn.

A.  **Timeliness of the Daleys' Removal**

The parties agree that the Daleys had 30 days after service of process to file a notice of removal and that the Daleys filed their notice of removal on September 25, 2017. (MTA Resp. (Dkt. # 31) at 2; MTA Reply (Dkt. # 38) at 1); *see also* 28 U.S.C. § 1446(b). However, the parties disagree on when service of process was completed and consequently, when the 30-day clock expired. (*See id.*) Ms. Pattison maintains that substitute service of process was completed on August 8, 2017. (*See* MTR Reply at 2; MTA Resp. at 2-4.) The Daleys purport that the substitute service of process was not properly accomplished and thus, service was not completed until counsel accepted service on September 27, 2017. (MTA Reply at 1-2.) Thus, the timeliness issue boils down to whether the substitute service of process on August 8, 2017, was valid.

"State law governs the sufficiency of the state court process." *Whidbee v. Pierce Cty.*, No. C14-0683RBL, 2014 WL 7185401, at *2 (W.D. Wash. Dec. 16, 2014). Thus, the court looks to Washington law to determine whether the August 8, 2017, substitute service of process was valid. Under Washington law, a defendant may be served "by leaving a copy of the summons at the house of his or her usual abode with some person of

//

//

//

suitable age and discretion then resident therein." RCW 4.28.080(16).[4] Accordingly, a plaintiff must satisfy three elements to effectuate substitute service of process: (1) a copy of the summons must be left at the defendant's usual abode; (2) with some person of suitable age and discretion; and (3) the person was at that time a resident at the house. *See Wichert v. Cardwell*, 812 P.2d 858, 859 (Wash. 1991); *Salts v. Estes*, 943 P.2d 275, 277 (Wash. 1997). Only the third element is at issue here.

Ms. Pattison relies on *Wichert v. Cardwell* for her proposition that the substitute service of process statute, and the definition of a "resident," ought to be construed liberally. (MTA Resp. at 3-4.) In *Wichert*, the court considered the validity of service on the defendants' adult daughter, who had stayed at the residence the night before but lived in her own apartment. 812 P.2d at 859. The court noted that "resident" was an "elastic" term and thus judged the sufficiency of service based upon whether the method used is one that "a plaintiff 'desirous of actually informing the absentee might reasonably adopt to accomplish it.'" *Id.* at 860 (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315 (1950)). Applying that standard, the court held that "[s]ervice upon a defendant's adult child who is an overnight resident in the house of defendant's usual abode, and then the sole occupant thereof, is reasonably calculated to accomplish notice to the defendant." *Id.*

//

---

[4] Ms. Pattison cites to RCW 4.28.080(14) as the relevant statute, but that provision applies to actions against "a self-insurance program." (*See* MTA Resp. at 3); RCW 4.28.080(14). The court presumes that Ms. Pattison meant to rely on RCW 4.28.080(16) instead.

ORDER - 7

But since *Wichert*, the Washington Supreme Court has also employed a more narrow interpretation of substitute service of process and the definition of "resident." *See Salts*, 943 P.2d at 278-80. In *Salts*, the court considered the sufficiency of service on a person who was looking after the defendant's home while the defendant was on vacation. *Id.* at 278-79. The court declined to hold that "mere presence in the defendant's home . . . is sufficient" because doing so would validate "service on just about any person present at the defendant's home, regardless of the person's real connection with the defendant." *Id.* at 280. The court reasoned that "[s]uch a relaxed approach toward service of process renders the words of the statute a nullity and does not comport with the principles of due process." *Id.* Thus, the court held that "'resident' must be given its ordinary meaning—a person is [a] resident if the person is actually living in the particular home." *Id.* The person who was present only to look after the defendant's home was not a resident, and thus, service was not effectuated. *Id.*

Washington courts have recognized that *Wichert* and *Salts* represent two different approaches to interpreting RCW 4.28.080(16): (1) the former, a liberal construction that takes into account the purpose behind the statute; and (2) the latter, a stricter adherence to the language of the statute. *See Baker v. Hawkins*, 359 P.3d 931, 934 (Wash. Ct. App. 2015). At least one Washington court has construed *Salts* as "eschew[ing] a liberal test" and "repudiat[ing] the expansive approach embraced in *Wichert*." *Id.*

The court need not determine whether *Wichert* remains good law, nor does it need to decide whether the facts of this case falls closer to *Wichert* or *Salts*, because the court concludes that there was no evidence the Daleys' son resided at the Daleys' home on

August 8, 2017. The Daleys attest that their son no longer lives at the residence and was only visiting on August 8, 2017. (*See* Roger Daley Decl. ¶ 4; Barbara Daley Decl. ¶ 4.) And unlike the daughter in *Wichert*, there is no evidence that the Daleys' son was an "overnight resident" who had stayed at the house the night before. *See Wichert*, 812 P.2d at 860; *Salts*, 943 P.2d at 279 (distinguishing *Wichert* on the fact that the daughter "had actually slept in the home of the defendants the previous night"). Moreover, there is no evidence that, as in *Wichert*, the Daleys' son was the "sole occupant" of the residence at the time of the attempted service. *See* 812 P.2d at 860. Indeed, the affidavit of service reveals the opposite, noting the presence of a woman in the front room. (Daleys Aff. of Serv. at 1.) Thus, even applying *Wichert*, Ms. Pattison cannot establish that she effected substitute service of process on August 8, 2017.

Because service was not completed on August 8, 2017, the Daleys were not properly served until their counsel accepted service on September 27, 2017. Thus, their notice of removal was timely. Having determined that the removal is timely, the court now addresses which notice of removal to consider in construing the court's jurisdiction.

**B.      Motion to Amend the Notice of Removal**

The Daleys sought to amend their notice of removal on October 5, 2017. (*See generally* MTA; Am. Not. of Removal.) Ms. Pattison maintains that the Daleys cannot amend for two reasons: (1) the amendment is untimely as judged from the August 8, 2017, substitute service of process; and (2) the amendment improperly asserts new grounds for removal. (MTR Reply at 3; MTA Resp. at 2-5.) The court disagrees on both fronts and thus grants the Daleys' motion to amend their notice of removal.

First, as discussed above, the August 8, 2017, attempt at substitute service of process was invalid. *See supra* § III.A. Thus, service on the Daleys was not effectuated until September 27, 2017. (*See* 2d Beneski Decl. ¶ 5, Ex. C at 1-2.) The amended notice of removal, filed on October 5, 2017, was well within the 30-day period during which removal is timely.

Ms. Pattison's second argument—that the amended notice of removal raises new grounds for removal—fails for similar reasons. Ms. Pattison is correct that a notice of removal "cannot be amended to add a separate basis for removal jurisdiction," but only when that amendment is sought "after the thirty day period." *See O'Halloran v. Univ. of Wash.*, 856 F.2d 1375, 1381 (9th Cir. 1988). Prior to the expiration of those 30 days, however, a defendant "may freely amend" the notice of removal. 14C Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3733 (4th ed. & 2017 Supp.). Indeed, Ms. Pattison includes this language in her briefing. (*See* MTA Resp. at 5 ("The notice of removal . . . may be amended freely by the defendant prior to the expiration of the [30]-day period for seeking removal.").) Because the amendment occurred within the 30-day period, the court agrees with the Daleys that whether the amendment asserted new grounds for removal is irrelevant. (*See* MTA Reply at 3.)

Because the Daleys seek to amend their notice of removal within 30 days of being served, the court grants their motion for leave to amend. The court now considers whether there is federal jurisdiction based upon the amended notice of removal.

//

//

C.  **Motion to Remand**

The Daleys removed this matter to federal court on the basis of diversity jurisdiction. (Am. Not. of Removal ¶ 5.) Although complete diversity is lacking as both Ms. Pattison and Ms. Van Vynck are domiciled in Washington,[5] the Daleys contend that diversity jurisdiction nonetheless exists because Ms. Van Vynck was fraudulently joined. (*Id.* ¶ 6.b.iv.) Ms. Pattison moves to remand the case for lack of subject matter jurisdiction. (*See generally* MTR; MTA Resp.) She contends first that there is no fraudulent joinder and thus no complete diversity. (MTA Resp. at 7-8.)[6] Alternatively, she contends that the Daleys fail to establish the required amount in controversy. (MTR 8-10; MTA Resp. at 8-12.) Because the court agrees that complete diversity is lacking, the court does not reach the amount in controversy question.

1.  Legal Standard

In general, a defendant may remove to federal court any state action over which a district court would have original jurisdiction. *See* 28 U.S.C. § 1441; *Ansley v. Ameriquest Mortg. Co.,* 340 F.3d 858, 861 (9th Cir. 2003). To remove an action, a

---

[5] Complete diversity requires that each plaintiff must be a citizen of a different state than each of the defendants. 28 U.S.C. § 1332(a)(1).

[6] Ms. Pattison did not include any arguments on the fraudulent joinder issue in her motion to remand because that motion was filed before the Daleys amended their notice of removal to include the fraudulent joinder argument. (*See* MTR; *compare* Not. of Removal, *with* Am. Not. of Removal.) Because of this, the Daleys dedicate almost the entirety of their response to Ms. Pattison's motion to remand to the argument that her motion is moot. (MTR Resp. (Dkt. # 28) at 3-5.) However, Ms. Pattison responds to the allegations of fraudulent joinder in her response to the Daleys' motion for leave to amend. (*See* MTA Resp. at 7-8.) For the sake of judicial efficiency, rather than having Ms. Pattison refile a motion to remand in which she repeats her fraudulent joinder arguments, the court considers what she has already submitted as a response to the amended motion to remand.

defendant must file with the district court a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). The "strong presumption against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper, and that the court resolves all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009). In addition to considering the notice of removal, "it is clearly appropriate for the district courts, in their discretion, to accept certain post-removal evidence as determinative of the jurisdictional requirements." *Janis v. Health Net, Inc.*, 472 F. App'x 533, 534 (9th Cir. 2012) (internal punctuation omitted) (quoting *Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 690-91 (9th Cir. 2006)); *see also Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002).

An "exception to the requirement for complete diversity is where a non-diverse defendant has been 'fraudulently joined.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). It is "commonplace that fraudulently joined defendants do not defeat removal on diversity grounds." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1319 (9th Cir. 1998). A defendant is fraudulently joined "[i]f the plaintiff fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state." *Id.* at 1318. In such a situation, the defendant's presence in the lawsuit is ignored for purposes of determining diversity. *Morris*, 236 F.3d at 1067.

Fraudulent joinder must be proved by clear and convincing evidence. *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). The party charging fraudulent joinder bears the "heavy burden" of showing that the complaint "obviously fails" to state a claim. *Hunter*, 582 F.3d at 1044. The removing party must

demonstrate that "there is no possibility that the plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of Am.*, 5 F. Supp. 2d 804, 807 (N. D. Cal. 1998). Therefore, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046.

2. <u>Application to the Daleys' Amended Notice of Removal</u>

The Daleys claim that Ms. Pattison fraudulently joined Ms. Van Vynck in an attempt to destroy diversity. (Am. Not. of Removal ¶ 6.b.iv.) As support, the Daleys argue that the amended complaint does not include any allegation of wrongdoing by Ms. Van Vynck, alleging only that she "marketed and sold Omnitrition's hCG Omni Drops to [Ms. Pattison]." (*Id.* ¶ 6.b.iv.B.) The Daleys maintain that this "bare-bones, undifferentiated allegation does not come close to stating a claim against her." (MTA Reply at 4.) The court disagrees.

At the outset, the amended complaint contains more than the one allegation against Ms. Van Vynck cited by the Daleys. Ms. Pattison also alleges that the "Defendants"—which necessarily include Ms. Van Vynck—"marketed and represented that Omnitrition's hCG Omni Drops were approved for homeopathic use by the FDA in the treatment of obesity claiming that the product would cause weight-loss." (FAC ¶ 6.7.) She further alleges that the Defendants "knew that hCG . . . and Omni Drops are not recognized or approved by the FDA for homeopathic use" and that "there was no evidence—scientific or otherwise—that hCG was effective for the treatment of obesity."

(*Id.* ¶ 6.9.) Ms. Pattison goes on to claim that "Defendants, and their agents" knew that the representations made to customers "were not supported by the FDA, the scientific community, were an economic fraud, and that hCG was illegal" and yet "failed to inform [Ms. Pattison] of these material facts and continued to milk their cash cow." (*Id.* ¶ 6.10.) And finally, Ms. Pattison asserts that Defendants "made numerous representations . . . regarding the Omni Drops product and program knowing that these representations were false." (*Id.* ¶ 6.17.) The Daleys cannot ignore these allegations against Ms. Van Vynck simply because they are alleged against "Defendants" collectively and do not list each defendant individually.

Moreover, Ms. Pattison makes additional factual allegations in a sworn declaration accompanying her responsive briefing that pertain to Ms. Van Vynck's marketing efforts. (*See generally* Pattison Decl. (Dkt. # 32).) Between 2012 and 2017, Ms. Pattison attests that she and Ms. Van Vynck lived in the same neighborhood, and when Ms. Van Vynck began selling Omni Drops, she communicated with Ms. Pattison regarding the products. (*Id.* ¶ 2.) In one such conversation, Ms. Van Vynck represented to Ms. Pattison that "[i]t is super addicting how fast the weight comes off" and further asserted that Omni Drops "[have] the real hCG in it." (*Id.* ¶ 3, Ex. A at 3, 5.) Ms. Van Vynck also offered to allow Ms. Pattison to examine the Omnitrition products and provided information on the ordering process. (*Id.* at 7-9.)

Considering these allegations, it is at least possible that a state court would find Ms. Pattison sufficiently states a cause of action against Ms. Van Vynck. *See Hunter*, 582 F.3d at 1046. For instance, under Washington law, fraud consists of a material and

false representation of a fact; the speaker's knowledge of the statement's falsity; the speaker's intent for the listener, who is unaware of the statement's falsity, to act on the statement; the listener's right to rely on and actual reliance on the truth of the statement; and the listener's subsequent damage. *See Sigman v. Stevens-Norton, Inc.*, 425 P.2d 891, 895 (Wash. 1967). Ms. Pattison alleges that Ms. Van Vynck marketed the effectiveness of Omni Drops and its hCG content for weight-loss purposes, knew that such statements were false, intended Ms. Pattison to act on those statements by purchasing Omni Drops, and that Ms. Pattison did indeed rely upon those statements and suffered harm by purchasing and using Omni Drops. (FAC ¶¶ 2.5; 6.7-6.15; *see* Pattison Decl. ¶¶ 2-3, Ex. A.) The court does not, of course, pass judgment on whether these allegations will be ultimately meritorious, but at this stage, they support, at the very least, a "possibility that a state court would find that [Ms. Pattison's] complaint states a cause of action against [Ms. Van Vynck]." *See Hunter*, 582 F.3d at 1046. Thus, the court concludes that the Daleys have not met their "heavy burden" of demonstrating that Ms. Pattison "obviously fails" to state a claim against Ms. Van Vynck.[7] *See id.* at 1044. As such, the court finds that the joinder of Ms. Van Vynck was proper and remands this matter to state court.

---

[7] Additionally, the court recognizes that Washington state courts utilize a possibility standard when determining whether to dismiss under CR 12(b)(6) instead of the more stringent plausibility standard utilized by federal courts. *Compare McCurry v. Chevy Chase Bank, FSB*, 233 P.3d 861, 862 (Wash. 2010), *with Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, in state court, a complaint will be dismissed only when no set of facts which the plaintiff could prove, consistent with the complaint, would entitle relief on the claim. *See Halvorson v. Dahl*, 574 P.2d 1190, 1191 (1978). This lower pleading standard only makes it more likely that the state court would find Ms. Pattison's allegations against Ms. Van Vynck adequate to state a cause of action.

The Daleys emphasize the fact that Ms. Van Vynck purportedly never sold any Omni Drops directly to Ms. Pattison. (*See* Am. Not. of Removal ¶ 6.b.iv.B; MTA Reply at 4; Jordan Decl. (Dkt. # 22) ¶ 3; Van Vynck Decl. (Dkt. # 23) ¶ 3.) The court first notes that Ms. Pattison, in her sworn declaration, disagrees on this question of fact and includes an order history illustrating purchases made through Ms. Van Vynck's distributor website. (Pattison Decl. ¶ 4, Ex. B.) In considering fraudulent joinder, all disputed questions of fact must be resolved in favor of the non-removing party—here, Ms. Pattison. *See Onelum v. Best Buy Stores L.P.*, 948 F. Supp. 2d 1048, 1051 (C.D. Cal. 2013). But even if the court accepts the Daleys' contention as true—that is, that Ms. Van Vynck never directly sold Omni Drops to Ms. Pattison—the lack of direct sales does not necessarily defeat Ms. Pattison's allegations premised on misrepresentations that Ms. Van Vynck allegedly made while marketing or promoting the product. Indeed, the Daleys identify no case law demonstrating that Ms. Pattison's state law claims are predicated on the existence of a direct sale.[8] (*See generally* Am. Not. of Removal; MTA; MTA Reply; MTR Resp.); *see Sigman*, 425 P.2d at 895 (listing nine elements of common law fraud without mention of direct sales); *Panag v. Farmers Ins. Co. of Wash.*, 204 P.3d 885, 892 (Wash. 2009) ("We hold that a private CPA action may be brought by one who is not in a consumer or other business relationship with the actor against whom the suit is brought.").

---

[8] Ms. Pattison accuses Ms. Van Vynck and Omnitrition Vice President of Operations Cindy Jordan of perjury for attesting that Ms. Van Vynck did not sell Omni Drops to Ms. Pattison. (MTA Resp. at 6.) Because the court finds that these statements are unhelpful even if they were true, the court does not wade into the issue of perjury.

The Daleys also rely on the timing of Ms. Pattison's amended complaint, arguing that the "timing and 'surprise' nature of the joinder alone strongly suggests it was fraudulent." (MTA Reply at 4; *see also* Am. Not. of Removal ¶ 6.b.iv.C ("It is evident from the timing of [Ms. Pattison's] filing of the FAC . . . that Ms. Van Vynck was named as a defendant solely to destroy diversity for purposes of removability.").) Tellingly, the Daleys cite no case law to support the proposition that timing alone satisfies the heavy burden of establishing fraudulent joinder. (*See id.*) And understandably so, because the law surrounding fraudulent joinder focuses on the failure of the plaintiff to state a cause of action against the joined defendant. *See, e.g., Morris*, 236 F.3d at 1067. As discussed above, the court concludes that it is possible for a state court to find Ms. Pattison's allegations against Ms. Van Vynck sufficient. The court declines to stray from this conclusion—which is grounded in established state law—simply because the "timing" of Ms. Pattison's joinder may seem suspect.

In sum, even accepting the Daleys' amended notice of removal, they are unable to establish diversity jurisdiction. Both Ms. Pattison and Ms. Van Vynck are residents of Washington, and thus, there is no complete diversity amongst the parties. Furthermore, the Daleys have not shown that Ms. Pattison fraudulently joined Ms. Van Vynck because there is a possibility that Ms. Pattison will be able to establish a cause of action against Ms. Van Vynck in state court. Accordingly, the court grants Ms. Pattison's motion and remands this action to King County Superior Court. Because the court remands this action, the court denies as moot the remaining pending motions in this matter.

//

### D. Attorney's Fees

Ms. Pattison asks the court to order Defendants to pay her the costs and expenses, such as attorneys' fees, that she incurred in filing this motion to remand. (MTR at 10-11; MTR Reply at 5-6.) "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Corp.*, 546 U.S. 132, 141 (2005). "[W]hen an objectively reasonable basis exists, fees should be denied." *Gardner v. UICI*, 508 F.3d 559, 561 (9th Cir. 2007).

Here, the court finds that Defendants had an objectively reasonable basis for removal. Ms. Van Vynck was joined as a defendant after the original Defendants had notified Ms. Pattison of their intent to remove, and thus, it was objectively reasonable for Defendants to seek removal based upon the theory that Ms. Van Vynck was fraudulently joined. Moreover, although the court finds the allegations against Ms. Van Vynck to be sufficient, it is further objectively reasonable for the Defendants to contend otherwise, especially with the declarations from Ms. Van Vynck and Ms. Jordan that there was no business relationship between Ms. Van Vynck and Ms. Pattison. (*See* Van Vynck Decl. ¶ 3; Jordan Decl. ¶ 3.) Accordingly, the court denies Ms. Pattison's request for fees.

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS the Daleys' motion for leave to amend their notice of removal (Dkt # 24) and GRANTS Ms. Pattison's motion to remand (Dkt. # 12). The court also DENIES as moot all remaining motions (Dkt. ## 10, 15, 33). The court ORDERS that:

1. All further proceedings are REMANDED to the Superior Court for King County in the State of Washington;
2. The Clerk shall send copies of this order to all counsel of record for all parties;
3. Pursuant to 28 U.S.C. § 1447(c), the Clerk shall mail a certified copy of the order of remand to the Clerk for the Superior Court for King County, Washington;
4. The Clerk shall also transmit the record herein to the Clerk of the Court for the Superior Court for King County, Washington;
5. The parties shall file nothing further in this matter, and instead are instructed to seek any further relief to which they believe they are entitled from the courts of the State of Washington, as may be appropriate in due course; and
6. The Clerk shall CLOSE this case.

Dated this 30th day of November, 2017.

JAMES L. ROBART
United States District Judge