UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEANA PATTISON,<br><br>                Plaintiff,<br><br>    v.<br><br>OMNITRITION<br>INTERNATIONAL, INC., et al.,<br><br>                Defendants. | CASE NO. C17-1454JLR<br><br>ORDER ON MOTIONS TO<br>DISMISS AND MOTION FOR<br>RELIEF FROM DEADLINE |

## I.     INTRODUCTION

Before the court are: (1) Defendants Omnitrition International, Inc. ("Omnitrition"), Roger M. Daley, and Barbara Daley's ("the Daleys") (collectively, "the Omnitrition Defendants") motion to dismiss Plaintiff Deanna Pattison's complaint (Omnitrition MTD (Dkt. # 10)); (2) Ms. Pattison's motion for relief from a deadline relating to the Omnitrition Defendants' motion to dismiss (Mot. for Relief (Dkt. # 15)); and (3) Defendant Jennifer Van Vynck's motion to dismiss Ms. Pattison's complaint

ORDER - 1

(Van Vynck MTD (Dkt. # 33)). The court has considered the motions, the parties' submissions in support of and in opposition to the motions, the relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS the Omnitrition Defendants' motion to dismiss with leave to amend, GRANTS Ms. Van Vynck's motion to dismiss with leave to amend, and DENIES Ms. Pattison's motion for relief.

## II. BACKGROUND

Ms. Pattison brought this putative class action on July 25, 2017, against the Omnitrition Defendants, Ms. Van Vynck, and Does 1-100 unnamed Omnitrition Independent Marketing Associates ("IMA") (collectively, "Defendants"). (*See* FAC (Dkt. # 1-2).) She challenges Defendants' "illegal and deceptive practice of manufacturing, promoting, marketing, selling, and distributing" over-the-counter weight-loss products, called Omni Drops, which contains human chorionic gonadotropin ("hCG"), a hormone that has been prescribed to assist weight loss. (*Id.* ¶ 1.1.) Allegedly relying on Defendants' representations and advertisements that users will experience "significant and rapid weight loss," Ms. Pattison purchased Omni Drops and was "misled into purchasing and paying for a product that is not as represented." (*Id.* ¶ 4.32.)

Ms. Pattison lays out a brief history regarding the ineffectiveness of hCG as a treatment for obesity, asserting that as far back as 1962, scientific studies suggested that hCG intake may potentially be "more hazardous to the patient's health than continued

//

---

[1] The Omnitrition Defendants request oral argument (*see* Omnitrition MTD), but the court denies the request because oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

obesity." (*Id.* ¶ 4.2; *see also id.* ¶¶ 4.1-4.14.) In 2011, Ms. Pattison alleges that the FDA announced there was no evidence that hCG products are effective for weight loss. (*Id.* ¶¶ 4.9-4.13.) The FDA allegedly issued several warning letters to companies marketing hCG products for weight loss, although Omnitrition was not one of the companies receiving a warning letter. (*Id.* ¶¶ 4.10, 4.30.) The FDA also allegedly announced to consumers that over-the-counter products claiming to contain hCG are illegal. (*Id.* ¶¶ 4.9-4.13; *id.*, Exs. A-C.) Ms. Pattison purports that by the end of 2011, the FDA and FTC advised consumers to "steer clear of over-the-counter and homeopathic hCG products as unproven and illegal." (*Id.* ¶ 4.28.)

Ms. Pattison alleges that Defendants[2] introduced their hCG product Omni Drops to the market in January 2011. (*Id.* ¶ 4.15.) The complaint describes purported misrepresentations in three areas: (1) on the product label, (2) in training materials for Omitrition IMAs, who sell Omnitrition products, and (3) in Omnitrition marketing materials. First, the "original label" on Omni Drops bottles allegedly stated that "Omnitrition Official Homeopathic Weight Loss Drops" were "[a] fast and effective way to lose unwanted pounds and inches!" (*Id.* ¶ 4.16.) This label also allegedly contained a disclaimer that "this product is not intended to diagnose, treat, cure, or prevent any disease." (*Id.* ¶ 4.17.) Second, Defendants' training materials allegedly instructed agents to tell customers about the expected weight loss and to share testimonials of individuals

---

[2] Ms. Pattison utilizes "Defendants" throughout her complaint without specifying exactly which of the Defendants she includes in that grouping. (*See generally* Compl.) The court presumes that she is referring to all Defendants—Omnitrition, the Daleys, Ms. Van Vynck, and Does 1-100 collectively.

experiencing weight loss. (*Id.* ¶¶ 4.24, 4.26.) Third, the complaint asserts that Defendants' advertisements portray Omni Drops as "safe and effective products that will result in rapid and safe weight loss of up to two pounds per day." (*Id.* ¶ 4.25.) By August 2011, the complaint alleges that Defendants reported a sales growth of 294%, largely attributable to the sales of Omni Drops. (*Id.* ¶ 4.27.)

In response to the FDA and FTC advisements, Ms. Pattison asserts that Defendants altered their marketing at the end of 2011. (*Id.* ¶ 4.28.) Defendants allegedly "revamped their Omni Drops label" by removing the "Weight Loss Drops" designation and the hCG lettering. (*Id.* ¶ 4.29.) They also purportedly "required [their] agents to remove any photos or images of the Omni Drops product from marketing materials, websites, and social media platforms." (*Id.* ¶ 4.30.) As a result of these alleged misrepresentations and omissions, Ms. Pattison claims that she and other putative class members were misled into "paying for a product that is not as represented." (*Id.* ¶ 4.32.)

Based on these allegations, Ms. Pattison brings five claims against Defendants: (1) violation of Washington's Consumer Protection Act ("CPA"), RCW ch. 19.86, by engaging in unfair and deceptive acts or practices (*id.* ¶¶ 6.1-6.5); (2) fraud in its marketing of Omni Drops (*id.* ¶¶ 6.7-6.15); (3) misrepresentation regarding Omni Drops (*id.* ¶¶ 6.16-6.19); (4) unjust enrichment through Defendants' wrongful conduct (*id.* ¶¶ 6.20-6.22); and (5) piercing the corporate veil as to Omnitrition and the Daleys (*id.* ¶¶ 6.23-6.28). In their two motions to dismiss, brought by the Omnitrition Defendants and Ms. Van Vynck respectively, Defendants seek to dismiss all claims. (*See* Omnitrition MTD; Van Vynck MTD.) After the Omnitrition Defendants' motion to

1 | dismiss was filed, Ms. Pattison submitted a motion for relief from the filing deadline
2 | associated with that motion, in which she argues that a dispositive motion should not be
3 | considered prior to class certification.[3] (*See* Mot. for Relief at 4-5.) The court now
4 | addresses these motions.

## III. ARGUMENT

At the outset, the court addresses the issue raised by Ms. Pattison in her motion for relief: whether the court should consider Defendants' motions to dismiss before determining the class certification issue. The court then turns to the merits of Defendants' motions to dismiss.

### A. Ms. Pattison's Motion for Relief

As noted above, the sole issue remaining in Ms. Pattison's motion for relief is whether the court may consider Defendants' dispositive motions at this time. (*See* Mot. for Relief at 4-5.) Ms. Pattison argues that "it makes little sense to consider a dispositive motion prior to class certification" and that the "normal practice in the Western District is that class certification motions are resolved followed by any dispositive motions." (*See id.*) The court disagrees.

In fact, the opposite is true: District courts in the Ninth Circuit commonly resolve dispositive motions before turning to class certification. *See, e.g., Boyle v. Madigan*, 492

//

---

[3] The court previously ordered a new briefing schedule that effectively granted Ms. Pattison the relief she sought from the October 23, 2017, filing deadline. (*See* 1/5/18 Order (Dkt. # 47) at 3-4.) However, because Ms. Pattison's motion for relief made this argument to strike the motion to dismiss until after class certification (Mot. for Relief at 4), the court concluded that it would consider this specific issue alongside the two motions to dismiss (1/5/18 Order at 8 n.4).

F.2d 1180, 1182 (9th Cir. 1974). In *Boyle*, the district court "proceeded directly to dismissal of the action" before making any determinations under Federal Rule of Civil Procedure 23(c)(1). *Id.* The Ninth Circuit held that "this is the proper course to follow where the named plaintiffs have failed to state a claim in themselves for the relief they seek." *Id.* That is, "[u]ntil [plaintiffs] can show themselves aggrieved in the sense that they are entitled to the relief sought, there is no occasion for the court to wrestle with the problems presented in considering whether the action may be maintained on behalf of the class." *Id.* Since *Boyle*, the Ninth Circuit has reiterated several times that "the district court need not inquire as to whether [a] meritless claim should form the basis of a class action."[4] *Corbin v. Time Warner Entm't-Advance/Newhouse P'ship*, 821 F.3d 1069, 1085 (9th Cir. 2016) (listing cases).

Thus, the court rejects Ms. Pattison's contention that the court should not consider Defendants' motions to dismiss simply because the court has not yet decided the class certification question. Accordingly, the court now turns to Defendants' two motions to dismiss.

**B.     Defendants' Motions to Dismiss**

Defendants makes two main arguments in their motions to dismiss.[5] First, Defendants allege that all claims are time-barred. (Omnitrition MTD at 6-7; Van Vynck

---

[4] Tellingly, Ms. Pattison cites no Ninth Circuit authority to support her argument. (*See* Mot. for Relief at 4-5.)

[5] Both parties rely on almost identical arguments in addressing the two motions to dismiss. (*See, e.g.*, Van Vynck MTD at 10 (joining and incorporating by reference Omnitrition Defendants' timeliness argument); Van Vynck MTD Resp. (Dkt. # 51) at 10 (incorporating by

MTD at 5-10.) Alternatively, they maintain that the complaint, in its entirety, fails to state a claim. (Omnitrition MTD at 7-14; Van Vynck MTD at 10-12.) Because the court finds that Ms. Pattison's claims, as currently pleaded, are time-barred, it does not reach the issue of whether the complaint contains sufficient factual allegations to state a claim.

1. <u>Legal Standard Under Rule 12(b)(6)</u>

Dismissal for failure to state a claim "is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility requirement "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" liability for the alleged misconduct. *Twombly*, 550 U.S. at 556. "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

---

reference its response to the timeliness arguments asserted in its response to Omnitrition Defendants' motion to dismiss).) Thus, the court addresses the two motions to dismiss together.

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "Mere conclusory statements" or "formulaic recitation[s] of the elements of a cause of action," however, "are not entitled to the presumption of truth." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555).

On a motion to dismiss, the court may consider the pleadings, documents attached to the pleadings, documents incorporated therein, or matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)). However, the court may not consider new allegations that are made for the first time in a responsive brief. *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); *Mickelson v. Chase Home Fin. LLC*, No. C11-1445MJP, 2012 WL 3596227, at *2 (W.D. Wash. Aug. 21, 2012) ("New allegations in support of claims cannot be made in a responsive brief.").

2. <u>Ms. Pattison's Claims</u>

Ms. Pattison brings claims alleging violation of the CPA, fraud, misrepresentation, unjust enrichment, and piercing the corporate veil. The court addresses each in turn.

//

//

*a. CPA Claim*

Defendants maintain that Ms. Pattison's CPA claim is time-barred. A claim under the CPA is barred unless commenced "within four years after the cause of action accrues." *Shepard v. Holmes*, 345 P.3d 786, 790 (Wash. Ct. App. 2014) (internal quotation marks omitted) (quoting RCW 19.86.120). Here, Ms. Pattison filed her claim on July 25, 2017. (Not. of Removal (Dkt. # 1) at 1-2.) Thus, any CPA claim that accrued prior to July 25, 2013, is time-barred.

Here, Ms. Pattison includes almost no dates in her complaint, and thus, it is difficult for the court to ascertain when the alleged violations occurred. (*See generally* FAC.) The few allegations that contain dates involve events that occurred no later than 2011. (*See generally id.*) For instance, the complaint alleges that the FDA and FTC alerted the public regarding the dangers of hCG in 2011. (*Id.* ¶ 4.9-4.14; *see also id.*, Ex. C (press release from December 6, 2011).) The complaint further asserts that Omni Drops were unveiled on the market in January 2011, with allegations regarding the "original label," which presumably was also made no later than 2011. (*See id.* ¶¶ 4.15-4.16.) And, the complaint alleges that Defendants "altered their marketing" of Omni Drops to respond to FDA and FTC announcements "[b]y the end of 2011." (*Id.* ¶ 4.32.) Lastly, the complaint asserts that Ms. Pattison purchased Omni Drops in reliance on Defendants' representations "[a]t all times material herein." (*Id.* ¶ 2.6.)

A cause of action under the CPA accrues when the plaintiff, through the exercise of due diligence, knew or should have known the basis for the cause of action. *Shepard*, 345 P.3d at 790. Ms. Pattison includes no allegations supporting a reasonable inference

that she did not, or could not, know the basis for her CPA claim after the agency warnings and Defendants' alleged misrepresentations after those warnings. (*See* FAC.) In other words, based on her allegations, Ms. Pattison knew or should have known all the facts establishing the essential elements of her CPA claim once the FDA and FTC announcements in 2011 evinced that Defendants' representations of Omni Drops may constitute unfair and deceptive acts or practices—that was when Ms. Pattison had "the right to apply to a court for relief" under the CPA and thus when "the statute of limitations begins to run." *See O'Neil v. Estate of Murtha*, 947 P.2d 1252, 1254 (Wash. Ct. App. 1997). Thus, the expiration of the limitations period for Ms. Pattison's CPA claim is apparent on the face of her complaint. *See Von Saher*, 592 F.3d at 969.

Ms. Pattison counters that the complaint contains allegations that Defendants' actions were "continuous and ongoing." (Omnitrition MTD Resp. (Dkt. # 49) at 7; *see also id.* at 10 (arguing that Defendants' actions are "on-going and continuing in nature, including to the present").) In so arguing, Ms. Pattison invokes the continuing violation doctrine: When "each overt act [by the defendant]... is part of the violation and... injures the plaintiff... each sale to the plaintiff[] starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *See Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 189 (1997). An overt act restarts the statute of limitations if it: (1) is a "new and independent act that is not merely a reaffirmation of a previous act"; and (2) "inflict[s] new and accumulating injury on the plaintiff." *Pace Indus. v. Three Phoenix Co.*, 913 F.2d 234, 237 (9th Cir. 1987).

//

The court finds that the continuing violation doctrine does not render Ms. Pattison's CPA claim timely for two reasons. First and foremost, Ms. Pattison does not plead the necessary allegations in her complaint. The notion that Defendants' actions were "continuous and ongoing" appears for the first time in Ms. Pattison's responsive briefing. (*See* Omnitrition MTD Resp. at 7; *see generally* FAC.) The court cannot consider these allegations regarding Defendants' continuing actions because they were not pleaded in her complaint. *See Mickelson*, 2012 WL 3596227, at *2. Indeed, Ms. Pattison's complaint indicates the opposite: Her claims regarding Defendants' labels, marketing, and training materials are all contained within the 2011 timeframe. (*See* FAC ¶¶ 4.1-4.32.)

Second, assuming that the allegations made in Ms. Pattison's briefing appeared in the complaint, it is unclear that the continuing actions described by Ms. Pattison qualify as overt acts. To restart the statute of limitations, the defendant "must take an unlawful 'new and independent act that is not merely a reaffirmation of a previous act' during the limitations period." *Ryan v. Microsoft Corp.*, 147 F. Supp. 3d 868, 884 (N.D. Cal. 2015) (quoting *Pace*, 813 F.2d at 237). In *Ryan*, allegations that the defendant "maintained and reaffirmed" its behavior without allegations of any "new and independent act" was insufficient to qualify as a continuing violation. *Id.* at 884-85. Similarly, Ms. Pattison's general allegations that Defendants "continue" to include misrepresentations in their labeling, training, and marketing materials (Omnitrition MTD Resp. at 7) seem to constitute "a reaffirmation of a previous act" rather than a "new and independent act," *see*

//

*Ryan*, 147 F. Supp. 3d at 884-85.[6] Thus, even if Ms. Pattison had pleaded continuous behavior in the complaint, the court is unable to conclude that the alleged continuous behavior, as expressed in Ms. Pattison's briefing, amounts to an overt act that triggers the continuing violations doctrine.

Ms. Pattison's remaining arguments are equally without merit. Ms. Pattison contends first that the statute of limitations is equitably tolled. She is correct that Washington "allows equitable tolling of the statute of limitations when justice requires." *See Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1096 (W.D. Wash. 2011). However, the equitable doctrine is applied "sparingly" and available only in "extreme cases." *Scholar v. Pacific Bell*, 963 F.2d 264, 267-68 (9th Cir. 1992). Equitable tolling applies only when there is "bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." *Trotzer v. Vig*, 203 P.3d 1056, 1062 (Wash. Ct. App. 2009). That is, because of the defendant's bad behavior, "the plaintiff is prevented from asserting a claim by wrongful conduct." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999). Ms. Pattison simply repeats the alleged wrongful conduct that underlies her claims—namely, that Defendants made "false statements in the manufacture, marketing, and sale of their product." (*See* Omnitrition MTD Resp. at 8.) She is silent, in both her complaint and her briefing, on how that behavior "prevented" her from asserting the claim in a timely manner. *See Stoll*, 165 F.3d at 1242. She further

---

[6] Indeed, Ms. Pattison's allegations of continuing behavior stand in contrast to the case that she cites in support (*see* Omnitrition MTD Resp. at 10), where the defendant committed new and separate violations that the Ninth Circuit deemed to be continuing torts, *see Alaska Airlines Inc. v. Carey*, 395 F. App'x 476, 479 (9th Cir. 2010).

fails to identify any "extraordinary circumstances beyond [her] control [that] made it impossible to file the claims on time." *See Huynh*, 465 F.3d at 1004. Thus, the court declines to permit equitable tolling based on the allegations in Ms. Pattison's complaint.

The court reaches the same conclusion under Washington's discovery rule. "The discovery rule is an exception to the general rule of accrual, and has been applied by Washington courts to claims where 'injured parties do not, or cannot know that they have been injured.'" *Shepard*, 345 P.3d at 790. Under the discovery rule, the cause of action accrues when a plaintiff, through the exercise of due diligence, "knew or should have known the basis for the cause of action." *Green v. Am. Pharm. Co.*, 935 P.2d 652, 655 (Wash. Ct. App. 1997). As discussed above, Ms. Pattison's own allegations—that the FDA and FTC issued public warnings in 2011 regarding hCG-containing products (FAC ¶ 4.11)—indicate that Ms. Pattison certainly could have known, and likely should have known, the basis for her CPA claim in 2011. Moreover, Washington courts have found that actual discovery is inferred when the facts constituting the deceptive acts were matters of public record; the public record serves as "constructive notice to all the world of its contents." *Shepard*, 345 P.3d at 790 (internal quotation marks omitted) (quoting *Davis v. Rogers*, 222 P. 499, 501 (Wash. 1924)). Thus, the discovery rule is of no help to Ms. Pattison when the FDA and FTC warnings regarding hCG products were public and accordingly served as constructive notice.

Ms. Pattison fails to include any factual allegations regarding events occurring after July 25, 2013 in her 2017 complaint, and thus, even construing the complaint in the light most favorable to Ms. Pattison, the court cannot reasonably infer that her CPA claim

1 | is timely brought within the four-year limitation period. *See* RCW 19.86.120. Because

2 | the running of the statue is apparent on the face of her complaint, the court grants

3 | Defendants' motion to dismiss Ms. Pattison's CPA claim.

*b. Fraud, Misrepresentation, and Unjust Enrichment Claims*

The parties reiterate their statute of limitations arguments for Ms. Pattison's fraud, misrepresentation, and unjust enrichment claims. (*See* Omnitrition MTD at 6-7; Omnitrition MTD Resp. at 6-10; Van Vynck MTD at 10-12; Van Vynck MTD Resp. at 10.) Claims asserting fraud, misrepresentation, or unjust enrichment must be brought within three years. *See Shepard*, 345 P.3d at 738 (fraud and misrepresentation); *Bikila v. Vibram USA Inc.*, 218 F. Supp. 3d 1206, 1214 (W.D. Wash. 2016) (unjust enrichment); *see also* RCW 4.16.080(3)-(4). Thus, Ms. Pattison's claims must have accrued no earlier than July 25, 2014.

Ms. Pattison relies on the same allegations in her complaint and the same arguments in her briefing to contend that her fraud, misrepresentation, and unjust enrichment claims are timely. (*See* Omnitrition MTD Resp. at 6-10.) As above, the court finds her allegations insufficient and her tolling arguments inapplicable. *See supra* § III.B.2.a. As was the case with Ms. Pattison's CPA claim, the court finds that Ms. Pattison includes no factual allegations regarding Defendants' behavior or her injury after July 25, 2014. Nor does the court believe that the continuing violation doctrine, equitable tolling, or the discovery rule render Ms. Pattison's claims timely. Because the expiration of the limitations period is apparent on the face of Ms. Pattison's complaint even when all

22 | //

reasonable inferences are drawn in her favor, the court grants Defendants' motions to dismiss Ms. Pattison's fraud, misrepresentation, and unjust enrichment claims.

### c. Piercing the Corporate Veil Claim

Defendants maintain that piercing the corporate veil is not a cognizable cause of action. (*See* Omnitrition MTD at 13; Van Vynck MTD at 9-10.) The court agrees. The Ninth Circuit has explicitly held that "[a] request to pierce the corporate veil is only a means of imposing liability for an underlying cause of action and is not a cause of action in and of itself." *Local 159, 342, 343 & 444 v. Nor-Cal Plumbing, Inc.*, 185 F.3d 978, 985 (9th Cir. 1999). Ms. Pattison therefore may not assert it as a separate claim. Tellingly, Ms. Pattison makes no argument to the contrary in her responsive briefing. (*See generally* Omnitrition MTD Resp.; Van Vynck MTD Resp.) Accordingly, the court dismisses Ms. Pattison's piercing-the-veil claim against Omnitrition and the Daleys.

## C. Leave to Amend

As a general rule, when a court grants a motion to dismiss, the court should dismiss the complaint with leave to amend. *See Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051-52 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). The policy favoring amendment is to be applied with "extreme liberality." *Id.* at 1051. In determining whether dismissal without leave to amend is appropriate, courts consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowing the amendment, and the futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). But "[a]bsent prejudice, or a

strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Eminence*, 316 F.3d at 1052.

Ms. Pattison requests leave to amend her complaint should the court grant Defendants' motions. (Omnitrition MTD Resp. at 18-19; Van Vynck MTD Resp. at 10-12.) The court agrees that leave is warranted. There is no evidence of undue delay, bad faith, or dilatory motive on Ms. Pattison's part, nor is there any indication that the Defendants will suffer prejudice if the court permits amendment. *See Foman*, 371 U.S. at 182. And although Ms. Pattison has amended her complaint once as of right, that amendment was not in response to the court's determination of pleading deficiencies. (*See* FAC; *see generally* Dkt.)

Defendants argue only that amendment cannot cure time-barred claims and thus would be futile. (Omnitrition MTD at 7; Van Vynck MTD at 12-13.) But it is not clear that Ms. Pattison could not provide additional allegations that may render her claims timely. Where "the plaintiff offers to provide additional evidence that would add necessary details to an amended complaint and such [an] offer is made in good faith, leave to amend should be granted." *Broudo v. Dura Pharm.*, 339 F.3d 933, 941 (9th Cir. 2003). In her responsive briefing, Ms. Pattison stated that Defendants' deceptive claims and false assurances "are on-going and continuing in nature, including to the present." (Omnitrition MTD Resp. at 10.) This suggests that there may be specific actions taken by Defendants after 2011 that were not included in the complaint. Because additional

//

//

allegations about any such continuing behavior could trigger the continuing violations doctrine, Ms. Pattison may be able to cure her time-barred claims.[7]

The court, however, agrees with Defendants that leave to amend would be futile for the piercing-the-corporate-veil claim. Because piercing the corporate veil is not a viable cause of action, no amendment could cure that deficiency. *See Local 159, 342, 343 & 444*, 185 F.3d at 985. Thus, the court denies Ms. Pattison leave to amend her piercing-the-corporate-veil-claim.

Accordingly, the court grants Ms. Pattison leave to amend her CPA, misrepresentation, fraud, and unjust enrichment claims within 20 days of the entry of this order. Unlike the operative complaint, which indiscriminately accuses "Defendants" of taking a number of actions (*see* FAC), the second amended complaint must clearly indicate by name which individuals or entities took which actions and which claims Ms. Pattison asserts against which defendants. Ms. Pattison must submit with her second amended complaint a redlined version of the complaint or a document that otherwise identifies the changed or added factual allegations. *See* Local Rules W.D. Wash. LCR 15. The court cautions Ms. Pattison that the failure to timely amend her complaint, or the failure to remedy the deficiencies identified herein, will be treated as evidence of the futility of further amendment and may result in dismissal with prejudice.

//

---

[7] In granting leave to amend, the court takes no position on whether any additional allegations would, in fact, render Ms. Pattison's complaint timely through the continuing violation doctrine. Indeed, as noted earlier, it is unclear that the general assertions included in Ms. Pattison's responsive briefing regarding Defendants' continuous behavior would be sufficient to qualify as an overt act. *See supra* § III.B.2.a.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motions to dismiss (Dkt. ## 10, 33). The court DISMISSES Ms. Pattison's complaint in its entirety and GRANTS Ms. Pattison leave to amend as stated herein within 20 days of the entry of this order. The court further DENIES Ms. Pattison's motion for relief (Dkt. # 15) as discussed herein.

Dated this 23 day of March, 2018.

JAMES L. ROBART
United States District Judge