UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEANA PATTISON,

              Plaintiff,

v.

OMNITRITION INTERNATIONAL, INC., et al.,

              Defendants.

CASE NO. C17-1454JLR

ORDER OF DISMISSAL

## I. INTRODUCTION

Before the court is Defendants Omnitrition International, Inc. ("Omnitrition"), Roger M. Daley and Barbara Daley ("the Daleys") (collectively, "the Omnitrition Defendants"), and Jennifer Van Vynck's (collectively, "Defendants") motion to dismiss Plaintiff Deanna Pattison's second amended complaint. (MTD (Dkt. # 56).) Ms. Pattison opposes the motion. (Resp. (Dkt. # 57).) The court has considered the motion, the parties' submissions in support of and in opposition to the motion, the relevant portions

of the record, and the applicable law. Being fully advised,[1] the court grants the Defendants' motion for the reasons discussed below.

## II. BACKGROUND

Ms. Pattison's first amended complaint, filed on July 25, 2017, alleges that Defendants engaged in an "illegal and deceptive practice of manufacturing, promoting, marketing, selling, and distributing" over-the-counter weight-loss products, called Omni Drops, which contain a hormone known as human chorionic gonadotropin ("hCG"). (FAC (Dkt. # 1-2) ¶ 1.1.) Relying on Defendants' representations that hCG-containing Omni Drops would trigger "rapid and safe weight loss of up to two pounds per day" (*id.* ¶ 4.25), Ms. Pattison was allegedly "misled into purchasing and paying for a product that is not as represented" (*id.* ¶ 4.32). Ms. Pattison originally brought five claims against Defendants: (1) violation of Washington's Consumer Protection Act ("CPA"), RCW 19.86 *et seq.*, by engaging in unfair and deceptive acts or practices (*id.* ¶¶ 6.1-6.5); (2) fraud in its sale of Omni Drops (*id.* ¶¶ 6.7-6.15); (3) misrepresentation regarding Omni Drops (*id.* ¶¶ 6.16-6.19); (4) unjust enrichment through Defendants' wrongful conduct (*id.* ¶¶ 6.20-6.22); and (5) piercing the corporate veil as to the Omnitrition Defendants (*id.* ¶¶ 6.23-6.28).

Defendants moved to dismiss all claims within Ms. Pattison's first amended complaint as time-barred and failing to state a claim. (*See* Omnitrition MTD (Dkt. # 10);

//

---

[1] Neither party requests oral argument (*see* MTD at 1; Resp. at 1), and the court finds that oral argument would not be helpful to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

Van Vynck MTD (Dkt. # 33).)[2] The court granted the motions, concluding that the running of the statute of limitations was apparent on the face of Ms. Pattison's complaint. (1st MTD Order at 7.) Specifically, the court noted that the only dates Ms. Pattison included in her complaint involved "events that occurred no later than 2011," more than the three or four year limitations periods for her claims. (*Id.* at 9-10, 14-15.) The court further concluded that Ms. Pattison failed to plead the necessary allegations to toll the limitations period using the continuing violation doctrine, the equitable tolling doctrine, or the discovery rule. (*See id.* at 10-13.) The court could not reasonably infer that her claims were timely and dismissed them accordingly.[3] (*Id.* at 13-15.)

However, the court granted Ms. Pattison leave to amend her claims because it was "not clear that [she] could not provide additional allegations that may render her claims timely." (*Id.* at 16.) The court cautioned Ms. Pattison that her second amended complaint "must clearly indicate by name which individuals or entities took which actions" and that the failure to remedy the deficiencies identified by the court's first order of dismissal would "be treated as evidence of the futility of further amendment" and could "result in dismissal with prejudice." (*Id.* at 17.)

//

//

---

[2] The Omnitrition Defendants filed separately from Ms. Van Vynck because Ms. Pattison added Ms. Van Vynck as a defendant at a later time. (*See* FAC; Van Vynck MTD at 1.) Because the two motions presented similar arguments, the court addressed the two motions together. (*See* 1st MTD Order (Dkt. # 54) at 6 n.5.)

[3] The court also dismissed Ms. Pattison's "piercing the corporate veil" claim because it was not a cognizable cause of action. (1st MTD Order at 15.) Ms. Pattison removed this claim from her second amended complaint. (*See* SAC; Redlined SAC (Dkt. # 55-1) at 30-31.)

Ms. Pattison filed her second amended complaint on April 11, 2018. (*See* SAC.) In her second amended complaint, she reiterates the ineffectiveness of hCG as a treatment for obesity, asserting that as far back as 1962, scientific studies suggested that hCG intake may potentially be "more hazardous to the patient's health than continued obesity." (*Id.* ¶ 4.2; *see also id.* ¶¶ 4.1-4.14.) Ms. Pattison alleges that in 2011, the FDA announced there was no evidence that hCG products are effective for weight loss. (*Id.* ¶¶ 4.9-4.13.) The FDA, along with the Federal Trade Commission ("FTC"), allegedly issued several warning letters to companies marketing hCG products for weight loss. (*Id.* ¶ 4.10.) The FDA and FTC also allegedly announced to consumers through various news releases that over-the-counter products claiming to contain hCG are unlawful. (*Id.* ¶¶ 4.9-4.13; *id.*, Exs. A-C.) Ms. Pattison purports that by the end of 2011, the FDA and FTC advised consumers to "steer clear of over-the-counter and homeopathic hCG products as unproven and illegal." (*Id.* ¶ 4.29.)

Ms. Pattison also made several changes in her second amended complaint. She clarifies in multiple paragraphs that "Defendants" referred to the Omnitrition Defendants and added some specific dates. (*See, e.g.*, *id.* ¶¶ 4.19-4.20, 4.32.) She additionally adds a section describing Omnitrition's "multilevel marketing system of distributors," which Ms. Pattison alleges "lent weight to the . . . misrepresentations and false statements about the safe and effective use of [its] products." (*Id.* ¶¶ 4.34-4.40.)

Lastly, and most significantly, Ms. Pattison details her Omni Drops purchases. On October 16, 2012, Ms. Pattison first contacted Ms. Van Vynck and expressed interest in Omni Drops. (*Id.* ¶ 4.42.) Around October or November 2012, Ms. Van Vynck told Ms.

Pattison that Omni Drops contained "the REAL HCG" and that it was "super addicting how fast the weight comes off." (*Id.* ¶ 4.43.) Based on these representations, Ms. Pattison first purchased Omni Drops in November 2012 and continued purchasing the product on May 20, 2015; February 19, 2016; May 23, 2016; and in December 2016. (*Id.* ¶¶ 4.44-4.45.)

Ms. Pattison asserts that "[e]ach time [she] purchased Omni Drops, [the Omnitrition Defendants] made baseless misrepresentations" through the product's label regarding the hCG content, the effects hCG had on weight loss, and Omni Drops as an approved homeopathic product. (*Id.* ¶¶ 4.47-4.48.) Additionally, she states that "throughout the time" of her purchases, the Omnitrition Defendants purportedly advertised that Omni Drops were "manufactured and 'Created In An FDA Stamped Facility.'" (*Id.* ¶¶ 4.19, 4.49.) Moreover, the Omnitrition Defendants allegedly stated in their training materials that Omni Drops are "[m]ade in an FDA approved facility in the United States"; that "each ingredient that goes into the product is approved for use by the FDA"; and that their agents should inform consumers that "women can expect weight loss of '1/2 to 1 pound per day' and that men can expect weight loss of '1 to 2 pounds per day.'" (*Id.* ¶ 4.49.) The complaint implies that these statements were originally made in 2011. (*See id.* ¶¶ 4.15-4.28.)

After Ms. Pattison filed her second amended complaint, Defendants filed a second motion seeking to dismiss all claims. (*See* MTD.) Much like the first motion to dismiss, Defendants argue that all claims are time-barred or, in the alternative, that the complaint fails to state a claim. (*See id.*) The court now addresses the motion.

## III. ANALYSIS

Ms. Pattison makes separate and distinct factual allegations regarding the Omnitrition Defendants and Ms. Van Vynck. (*See generally* SAC.) After reviewing the applicable legal standard, the court addresses Ms. Pattison's claims against the Omnitrition Defendants before turning to her claims against Ms. Van Vynck.

**A.  Legal Standard**

Dismissal for failure to state a claim "is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility requirement "simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal" liability for the alleged misconduct. *Twombly*, 550 U.S. at 556. "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2009) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)).

//

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "Mere conclusory statements" or "formulaic recitation[s] of the elements of a cause of action," however, "are not entitled to the presumption of truth." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555).

**B.    Claims Against the Omnitrition Defendants**

Ms. Pattison brings four claims against the Omnitrition Defendants. She first alleges that the Omnitrition Defendants violated the CPA by engaging in unfair and deceptive acts concerning Omni Drops. (SAC ¶ 6.2.) A CPA claim must be commenced "within four years after the cause of action accrues." *Shepard v. Holmes*, 345 P.3d 786, 790 (Wash. Ct. App. 2014) (internal quotations marks omitted) (quoting RCW 19.86.120). Ms. Pattison also brings claims of fraud, misrepresentation, and unjust enrichment. All three claims must be brought within three years. *See id.* at 738 (fraud and misrepresentation); *Bikila v. Vibram USA Inc.*, 218 F. Supp. 3d 1206, 1214 (W.D. Wash. 2016) (unjust enrichment); *see also* RCW 4.16.080(3)-(4). These limitations periods "begin[] to run when a party has the right to apply to a court for relief." *O'Neil v. Estate of Murtha*, 947 P.2d 1252, 1254 (Wash. Ct. App. 1997). Put differently, the limitations periods begin "when the plaintiff knew or should have known all the facts

underlying the essential elements of the action." *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1095 (W.D. Wash. 2011).

Here, Ms. Pattison's claims accrued on November 14, 2012, when she purchased her Omni Drops based on the Omnitrition Defendants' allegedly deceptive representations regarding the product. (*See* SAC ¶¶ 4.44, 4.53-4.54.) By that date, Ms. Pattison "knew or should have known" all the facts underlying the essential elements of her claims. *See Aventa Learning*, 830 F. Supp. 2d at 1095. By her own admission, by 2012, the FDA had publically "issued a warning to consumers" regarding the illegality of hCG-containing products and issued various statements regarding the lack of evidence supporting hCG products' effectiveness for weight loss. (*See* SAC ¶¶ 4.9-4.11 (attaching announcements published on the FDA's website).) A plaintiff exercising due diligence should have known, pursuant to the various announcements in 2011, that the Omnitrition Defendants' representations about Omni Drops were false and may constitute unfair and deceptive acts or practices.[4] *See Shepard*, 345 P.3d at 790; *Baddeley v. Seek*, 156 P.3d 959, 961 (Wash. Ct. App. 2007).

Accordingly, once Ms. Pattison suffered an injury in 2012—namely, her purchase of Omni Drops—her four-year statute of limitations for her CPA claim and her three-year

//

---

[4] Ms. Pattison asserts that she could not have easily discovered the FDA and FTC warnings because they "did not specifically name Omni Drops or [the Omnitrition Defendants]." (SAC ¶ 4.50; *see also* Resp. at 11-12.) But Ms. Pattison also takes issue with Defendants' representations regarding the hCG in Omni Drops (*see* SAC ¶¶ 4.31, 4.43, 4.47), and the public announcements undisputedly centered on hCG-containing products (*see id.* ¶¶ 4.3, 4.9-4.13). Thus, it is of no consequence that the FDA and FTC warnings did not specifically reference Omni Drops.

statute of limitations for her other claims began to run. Thus, even though Ms. Pattison subsequently purchased additional Omni Drops, she had the right to apply to the court for relief at the time of her first purchase on November 14, 2012.[5] Given that her claims accrued on November 14, 2012, Ms. Pattison had until November 14, 2016, to bring her CPA claim and until November 14, 2015, to bring her fraud, misrepresentation, and unjust enrichment claims. However, Ms. Pattison did not file suit until July 25, 2017. Thus, the expiration of the limitations period for Ms. Pattison's claims is apparent on the face of her complaint.[6] *See Von Saher*, 592 F.3d at 969.

Ms. Pattison counters again, as she did while opposing the previous motion to dismiss (*see* 1st Resp. (Dkt. # 49) at 7-10), by relying on three tolling doctrines. First, she argues that the continuing violation doctrine, or the continuing tort doctrine, renders her claim timely. (Resp. at 7-10.) Second, she maintains that the discovery rule tolls the statute of limitations. (*Id.* at 10-13.) And third, she contends that equitable tolling defeats the motion to dismiss. (*Id.* at 13-14.) The court disagrees on all three grounds.

---

[5] Although Ms. Pattison contends that each new sale gives rise to a separate claim, she cites no authority—and the court through its independent review could find no authority—that interprets accrual of claims in this way. (*See* Resp. at 6.) Notably, these subsequent sales are based off of the same statements that the Omnitrition Defendants allegedly made in 2011 and that Ms. Pattison relied upon for her first purchase. (*See* Resp. at 6-7; *see generally* SAC.) Thus, these later sales cannot revive an otherwise untimely claim.

[6] With no citation, Ms. Pattison opines that a finding of untimeliness would "lead to an absurd result" because a company could "sell a product for decades to a consumer using misrepresentations and deceptive practices so long as the consumer did not realize the deception and challenge the practice in the first four years." (Resp. at 9.) But Ms. Pattison exaggerates the implications of the court's finding. The court merely concludes that, pursuant to Washington law, when the consumer should have known of the misrepresentations because such information was readily and publically available, the consumer cannot wait more than four years to bring a claim. This conclusion does not give companies free reign to utilize deceptive practices.

First, although Washington recognizes the theory of continuing torts, Washington has limited the application of the doctrine largely to property claims, such as trespass or nuisance, or negligence claims.[7] *See Pac. Sound Res. v. B.N.S.F. Ry.*, 125 P.3d 981, 989 (Wash. 2005) (trespass, nuisance, and negligence case); *Doran v. City of Seattle*, 64 P. 230, 231 (1901) (negligence); *see also Diamond Concrete, LLC v. Pac. Nw. Reg'l Council of Carpenters*, No. C11-5360BHS, 2011 WL 3206906, at *2 (W.D. Wash. July 26, 2011) (recognizing that the doctrine typically applies to "nuisance and trespass"). In *Diamond Concrete, LLC v. Pacific Northwest Reg'l Council of Carpenters*, the court faced a similar scenario, where the plaintiffs argued that the doctrine of continuing torts rendered their defamation claims timely. 2011 WL 3206906, at *2. The court observed that "[p]laintiffs cite to no case, and this Court has found no case wherein a Washington court or a federal court applying Washington law has applied the doctrine of continuing torts to defamation claims." *Id.*

The same is true here. Ms. Pattison has not offered any case law analyzing Washington law that applies the continuing tort doctrine to a CPA, fraud, misrepresentation, or unjust enrichment claim. (*See* Resp. at 8.) And the court, in its review of the precedent, has not found any case wherein a Washington court, or a federal court applying Washington law, has applied the doctrine as Ms. Pattison asks the court to do here. In fact, the court has found quite the opposite. While analyzing the timeliness

---

[7] Additionally, Washington used to apply the continuing tort doctrine to employment discrimination claims. *See Cox v. Oasis Physical Therapy, PLLC*, 222 P.3d 119, 126 (Wash. Ct. App. 2009). However, the Washington Supreme Court has since "rejected the continuing violation doctrine . . . ." *Id.* (citing *Antonius v. King Cty.*, 103 P.3d 729, 732-36 (2004)).

of a CPA claim in the insurance context, a court declined to apply the continuing tort doctrine, reasoning that "no Washington court has applied the doctrine to [CPA] claims in the insurance context" and that "applying the continuing tort doctrine . . . would defeat the purpose of the CPA's four-year statute of limitations." *Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1309 n.9 (W.D. Wash. 2013). The court here reaches the same conclusion: Ms. Pattison may not rely on the continuing tort doctrine to revive her untimely CPA, fraud, misrepresentation, and unjust enrichment claims.[8]

Second, the discovery rule does not toll the limitations period. As the court explained in its previous order (1st MTD Order at 13-14), "[t]he discovery rule is an exception to the general rule of accrual, and has been applied by Washington courts to claims where 'injured parties do not, or cannot know that they have been injured,'" *Shepard*, 345 P.3d at 790. Under the discovery rule, the cause of action accrues when a plaintiff, through the exercise of due diligence, "knew or should have known the basis for the cause of action." *Green v. Am. Pharm. Co.*, 935 P.2d 652, 655 (Wash. Ct. App. 1997). But the plaintiff is charged with what "a reasonable inquiry would have discovered." *Green v. A.P.C.*, 960 P.2d 912, 916 (Wash. 1998). The plaintiff "bears the burden of proving that the facts constituting the claims were not and could not have been

//

---

[8] Ms. Pattison suggests that her claims should be controlled by federal law regarding tolling because the CPA states that the courts should be "guided by final decisions of the federal courts" in "construing [the CPA]." (Resp. at 7 (quoting RCW 19.86.920); *see also id.* at 7-8 (citing federal law on continuing tort doctrine).) But statutes of limitations are governed by state law. *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 108-09 (1945). And "[i]f the court applies a state statute of limitations, then it should also apply that state's tolling rules." *Malaivanh v. Humphreys Coll.*, No. 2:16-cv-01081-KJM-GGH, 2017 WL 3503386, at *2 (E.D. Cal. Aug. 16, 2017). Thus, the court applies Washington law rather than federal law.

discovered by due diligence within the applicable limitations period." *Clare v. Saberhagen Holdings, Inc.*, 123 P.3d 465, 467 (Wash. Ct. App. 2005).

As was the case before, Ms. Pattison has not included the necessary factual allegations to benefit from the discovery rule. She asserts that she did not know about the warnings against hCG products (SAC ¶ 4.50) but does not include any allegations regarding why a reasonable inquiry could or would not have discovered the numerous public warnings (*see generally id.*). Indeed, her allegations—that the FDA and FTC issued publicly available warnings (*id.* ¶¶ 4.9-4.14)—imply the opposite: The public nature of the information suggests that actual discovery on Ms. Pattison's part may be inferred. *See Shepard*, 345 P.3d at 790 (noting that when the facts constituting the deceptive acts were matters of public record, that record serves as "constructive notice to all the world of its contents" (internal quotation marks omitted) (quoting *Davis v. Rogers*, 222 P. 499, 501 (Wash. 1924))).[9] In other words, because someone "exercising a reasonable amount of diligence" likely could have discovered the public warnings, the discovery rule does not toll the limitations period here. *See Davis*, 222 P. at 501.

Third, and lastly, equitable tolling is inapplicable here. Although Washington "allows equitable tolling of the statute of limitations when justice requires," *Aventa Learning*, 830 F. Supp. 2d at 1096, the doctrine is applied "sparingly" and is available

//

---

[9] Ms. Pattison argues that the notion of constructive notice was "made in the context of property law" and thus should not apply to this case. (Resp. at 10-11.) Although Ms. Pattison is correct that *Shepard v. Holmes* involved a property issue, *Shepard* did not limit the application of constructive notice in any way. *See* 345 P.3d at 790-91. Nor does Ms. Pattison provide authority that demonstrates such a limitation. (*See* Resp. at 10-11.)

only in "extreme cases," *Scholar v. Pac. Bell*, 963 F.2d 264, 267-68 (9th Cir. 1992). Equitable tolling applies only when there is "bad faith, deception, or false assurances by the defendant and the exercise of diligence by the plaintiff." *Trotzer v. Vig*, 203 P.3d 1056, 1062 (Wash. Ct. App. 2009). As was the case with her first amended complaint, Ms. Pattison simply points to the same misconduct that forms the basis for her claims. (*See* Resp. at 13-14.) But she is again silent, in her second amended complaint and her briefing, on how that misconduct prevented her from asserting the claim in a timely manner. *See Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (noting that equitable tolling applies when "the plaintiff is prevented from asserting a claim by [the defendant's] wrongful conduct"); (SAC; Resp.). Nor does Ms. Pattison make any showing regarding her exercise of diligence. (*See* SAC; Resp.) Thus, the court again declines to permit equitable tolling based on the allegations in Ms. Pattison's complaint.

Because the running of the limitations periods is apparent on the face of Ms. Pattison's complaint, and none of the tolling doctrines apply, the court dismisses Ms. Pattison's claims against the Omnitrition Defendants as time-barred.

**C.     Claims Against Ms. Van Vynck**

Similarly, the court finds that Ms. Pattison's claims against Ms. Van Vynck are time-barred. The only factual allegations involving Ms. Van Vynck relate to statements she made to Ms. Pattison in October and November of 2012 prior to Ms. Pattison's first purchase of Omni Drops. (*See* SAC ¶¶ 4.42-4.44.) As discussed above, these actions fall outside the limitations period, and none of Ms. Pattison's tolling arguments are availing. *See supra* § III.B. Indeed, Ms. Pattison seems to have altogether abandoned her claims

against Ms. Van Vynck, as her response does not mention Ms. Van Vynck even once. (*See* Resp.) Accordingly, the court dismisses Ms. Pattison's claims against Ms. Van Vynck as time-barred.

**D.     Leave to Amend**

Leave to amend may be denied for "repeated failure to cure deficiencies by previous amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008). The court has already dismissed Ms. Pattison's claims as time-barred once. (*See* 1st MTD Order.) In that order, the court cautioned Ms. Pattison that "the failure to remedy the [timeliness] deficiencies . . . will be treated as evidence of the futility of further amendment and may result in dismissal with prejudice." (1st MTD Order at 17.) After amendment, Ms. Pattison has failed to remedy the time-bar issue. It is therefore absolutely clear that amendment could not cure the deficiencies, and the court declines to grant further leave to amend.[10]  *See Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995).

//

//

//

//

//

---

[10] Indeed, Ms. Pattison only requests leave to amend if the court finds that her allegations fail to state a claim. (*See* Resp. at 23 ("[I]f the [c]ourt finds that its allegations are not sufficient to state a claim, [Ms. Pattison] requests that the [c]ourt grant leave to amend.").) This limited request seemingly concedes that if the court once again finds her claims to be untimely, the court should not grant leave to amend.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion to dismiss (Dkt. # 56). The court DISMISSES Ms. Pattison's complaint with prejudice and without leave to amend.

Dated this 14th day of June, 2018.

JAMES L. ROBART
United States District Judge